UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE/OPELOUSAS DIVISION

| | |
|---|---|
| **JOHN R. FONTENOT, JR.** | **CIVIL ACTION NO. 08-764** |
| **VERSUS** | **JUDGE MELANCON** |
| **MICHAEL ASTRUE,** <br> **COMMISSIONER OF SOCIAL** <br> **SECURITY** | **MAGISTRATE JUDGE HANNA** |

*REPORT AND RECOMMENDATION*

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **REVERSED** and disability benefits be awarded consistent with an onset date of April 15, 2002.

*Background and the Commissioner's Findings*

John R. Fontenot, Jr., filed applications for disability insurance and supplemental security benefits on November 15, 2004, alleging a disability onset date of April 15, 2002. (R106, 108). In his application, Fontenot alleged he was unable to work because of "herniated discs in the neck." (R109).

Fontenot was born on February 14, 1965, and was 40 years old on the date of the hearing before the ALJ on December 20, 2005, and on the date of the Decision on February 7, 2006. ( R 26, 36). He had a 12th grade education. (R37). The ALJ found he had past work experience as a police officer, roustabout, and physical therapist assistant.

1

(R16).  Fontenot testified at the hearing before the ALJ, as did Lionel Bordelon (R33).

In the Decision, the ALJ found Fontenot had not engaged in substantial gainful employment since the alleged onset day of April 15, 2002.  (R17).  At the second step, he found Fontenot had the severe impairments of herniated discs at the C5-6 and C6-7 levels, intermittent nerve root irritation of the lumbar spine, and mild degenerative joint disease of the right elbow.  (R19, 24).  Although Fontenot alleged he suffered from depression, the ALJ specifically found it was not severe.  (R18, 19).  The ALJ found at the third step Fontenot did not have any impairment or combination of impairments that met or equaled in severity any listed impairment. (R19).

The ALJ found Fontenot had the following residual functional capacity:

> . . . the ability to perform occasional lifting and/or carrying of up to twenty pounds, frequent lifting and/or carrying of up to ten pounds, standing and/or walking for up to six hours in an eight-hour workday and continuously for one-half hour at a time, sitting for up to six hours in an eight-hour workday, no over-the-shoulder work with the left arm, work requiring lifting of light items, and no work requiring repetitive fine manipulation with the left hand. (R25).

Proceeding to the fourth step, the ALJ implicitly found Fontenot could not perform his past relevant work as a police officer, roustabout, and massage therapist, and proceeded to the fifth step of the analysis.  (R25).  After hearing testimony from the vocational expert, the ALJ found Fontenot could perform such representative jobs as a dispatcher, a file clerk, and a sales support worker.  (R25).  As a result, the ALJ determined Fontenot had not been under any disability, as defined in the Social Security

Act, from April 15, 2002, through the date of the Decision on February 7, 2006. (R25, 26). This appeal followed.

## *Assignment of Errors*

After a complete reading of claimant's brief, who is proceeding pro se, it appears he alleges the following errors:

I.  The ALJ erred in rejected the opinions of his treating physician, Dr. Roland Miller;

II. The ALJ's residual functional capacity was not supported by substantial evidence of record;

III. A subsequent filing of a new claim and a decision of approval of benefits without a medical change should have been considered by the Review Board.

## *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen ,

864 F.2d 340, 343 (5th Cir.1988).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

Under the first four steps of the sequential analysis,[1] the burden lies with the claimant to prove disability. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995). The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. Id. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational

---

[1] In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

Guidelines of the regulations or by expert vocational testimony or other similar evidence. Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir.1987). The burden of proof then returns to the claimant to rebut the Commissioner's showing. Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir.2002). A finding that a claimant is or is not disabled at any point in the five-step review is conclusive and terminates the analysis. Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

*Applicable Law and Discussion*

The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity. Perez v. Heckler, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ is entitled to determine the credibility of the examining physicians and medical experts and to weigh their opinions accordingly. Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994). The opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. Newton v. Apfel, 209 F.3d 448, 455-56 (5th Cir. 2000), citing Leggett v. Chater, 67 F.3d 558, 566 (5th Cir.1995); Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir.1994), cert. denied, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." Martinez v. Chater, 64 F.3d 172, 176 (5th Cir.1995), citing 20 C.F.R.

§404.1527(d)(2)).

The opinion of a treating physician "may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." Newton, 209 F.3d at 455-56 (citation omitted); see also Martinez v. Chater, 64 F.3d 172, 176 (5th Cir.1995).

When the ALJ rejects the opinion of the treating physician, the Fifth Circuit has held that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." Newton v. Apfel, 209 F.3d 448, 453 (5th Cir.2000) (emphasis added). Under the statutory analysis, the ALJ must evaluate: (i) the "[l]ength of the treatment relationship and the frequency of examination," (ii) the "[n]ature and extent of the treatment relationship," (iii) the supporting evidence presented by the physician, (iv) the level of consistency between the physician's opinion and the record, (v) the physician's specialization, and (vi) any other relevant factors. 20 C.F.R. § 404.1527(d)(2)-(6).

In his decision, the ALJ recognized Dr. Roland Miller as a board certified orthopedic surgeon who treated Fontenot from January 2002, to January 2005. (R20).

6

Dr. Miller completed a physical residual functional capacity assessment (RFC) on November 28, 2005. (R246 - 252). The ALJ interpreted Dr. Miller's RFC, in pertinent part, as follows:

> . . . standing and/or walking for a total of two hours, continuous standing, walking, or sitting for up to thirty minutes at a time, sitting for up to two hours, resting and taking breaks for four hours, occasional lifting and/or carrying of up to ten pounds, no climbing of ladders, reaching, handling, and fingering for less than one hour, no feeling, bending, stooping, squatting, crawling, climbing, crouching, kneeling, or balancing, less than one hour of bilateral manual dexterity . . . .(R22).

The ALJ refused to assign weight to Dr. Miller's opinion, finding it "not supported by clinical findings of record" and "in fact, self-contradictory in that it indicates the chiropractic treatment is actually controlling the claimant's condition." (R22). However, the ALJ did not perform the analysis required by 20 C.F.R. §404.1527(d)(2) prior to the rejection as he was required to do because the record did not contain any "reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist." Further, while the ALJ could have assigned little or no weight to Dr. Miller's opinions for "good cause," none of the "good cause" criteria – statements that are brief and conclusory, not supported by medically acceptable clinical, laboratory, or diagnostic techniques, or otherwise unsupported by the evidence – were present in this case.

The medical records are uncontradicted and consistent in recording, as the ALJ found at step two, severe impairments of herniated discs at the C5-6 and C6-7 levels,

7

intermittent nerve root irritation of the lumbar spine, and mild degenerative joint disease of the right elbow.  Moreover, the opinions rendered by medical providers regarding Fontenot's functional capacities since 2002, are consistent with and support Dr. Miller's opinion. Conversely, there is no substantial evidence to support the functional capacities assigned by the ALJ; i.e., that Fontenot was capable of walking/standing or sitting up to six hours in an eight hour workday.

On February 8, 2005, prior to the assessment by Dr. Miller, Fontenot was examined by Dr. John Sandifer, an orthopedist, at the request of disability determination services.  Dr. Sandifer's RFC was as follows:

> At the present time, he cannot do any repetitive overhead lifting at all with the left upper extremity.  Below shoulder lifting will be restricted to no more than 10 to 15 pounds occasionally.  He will have difficulty operating a keyboard or doing anything that requires fine motor skills with the left hand because of the persistent numbness he has. As far as his back condition is concerned he should not sit *for over 45 minutes to 1 hour at a time or over 4 hours in an 8 hour day*.  He cannot do repetitive bending at the waist and cannot do repetitive stooping, crawling, or climbing activities.  *He can stand for up to 1 hour at a time and up to 5 hours in an 8 hour day*. (R209-210)(Emphasis added).

The ALJ rejected this opinion as "not consistent with the claimant's clinical findings and the claimant's actual daily activities." (R22).  While Dr. Sandifer's RFC does not impose exactly the same stand and sit limitations as Dr. Miller's, and does not mention walking, it imposes more restriction than the ALJ's finding of an ability to stand or walk and sit for six hours in an eight hour work day.

A  Physical Residual Functional Capacity Assessment performed by a *non-*

*examining* DDS physician on February 17, 2005, limited Fontenot to standing and/or walking a total of "at least 2 hours in an 8-hour workday," but less than "about 6 hours in an 8-hour workday," and "sit (with normal breaks) for a total of "about 6 hours in an 8-hour workday." (R211). The DDS medical consultant noted Fontenot's "allegations are consistent with medical in file and are considered fully credible." (R216). Moreover, the medical consultant specifically noted he reviewed Dr. Sandifer's report, stating Dr. Sandifer's opinion "was considered and is not inconsistent with the administrative finding [his finding] of RFC." (R217). While the ALJ mentioned this agency RFC in his decision, it was not discussed, adopted, or rejected. (R21).

Fontenot was also seen by Dr. Randall Lea on September 18, 2002. Dr. Lea did address Fontenot's functional capacities, and opined "[h]e can alternate sit, stand, and walk every two hours. I would suggest he not drive more than an hour at a time, however." (R179). The ALJ did not mention this opinion in his decision.

The ALJ rejected the opinions of Dr. Miller, Dr. Sandifer, and implicitly Dr. Lea and the DDS reviewing physician's, stating he gave "controlling weight to the opinion of Dr. Gidman. . .[who] imposed no limitations of the claimant's ability to perform standing and/or walking." (R22). The undersigned finds this an inaccurate characterization of Dr. Gidman's report.

Dr. Gidman examined Fontenot on July 16, 2002, more than three years prior to the hearing and three months after the alleged disability onset date. Contrary to the ALJ's

9

statement that Fontenot received treatment from Dr. Gidman, Dr. Gidman's examination of Fontenot was "for a onetime visit without treatment" and "for a second medical opinion" at the behest of a worker's compensation carrier. (R165).

A careful reading of Dr. Gidman's report shows he did not assign Fontenot any limitations in standing, sitting or walking simply because he did not address these capacities at all. Instead, Dr. Gidman's concern was whether Fontenot needed surgery and the risk of further injury to his spinal cord, including paralysis, if he elected to forgo surgical intervention. Dr. Gidman opined, *inter alia*, as follows:

> I would also caution him about riding in cars, being involved in motor vehicle accidents or any activity that might require sudden motion or trauma to the head and neck area. I think all of these activities could make his symptoms much worse rather rapidly since he does have cord compression at the present time. My own feeling, and I feel this strongly in this particular individual, that he is a surgical candidate and should proceed with surgical decompression for large herniations in the cervical spine at the C5-6 and 6-7 levels. . . If he elects not to proceed with surgical intervention, he would be at MMI. His impairment rating, according to the <u>AMA Guides to the Evaluation of Permanent Impairment</u>, Fifth Edition, would be a DRE category III, equating to 15% whole-body impairment. He should avoid heavy and very heavy lifting, avoid any activity requiring repetitive neck motion or any sudden jarring of the cervical spine area. It is also my opinion, and I feel strongly in this particular case, that he should proceed with surgical decompression because of the numbness and weakness of the upper extremity and the large herniations at the c5-6 and 6-7 levels. If he proceeds with surgery he would not be at MMI. . . I'm very concerned that any trauma to the head or neck in a motor vehicle accident, manipulations or sudden altercations or sudden motions could significantly worsen his clinical situation with cord injury. I would not advise him returning to work as a police officer in this current condition, and if he does have surgical intervention with a two level fusion, which would probably also inhibit him from returning as a police officer in that it would require altercations with criminals. (R168).

10

Dr. Gidman imposed these limitations to prevent further injury to Fontenot's spinal cord, about which he obviously had great concern, and were not, as used by the ALJ, opinions regarding Fontenot's permanent residual functional capacities. Indeed, no functional capacity evaluation was performed by Dr. Gidman at all.

Therefore, the only evidence in the record relevant to the evaluation of residual functional capacities by treating or examining physicians is that of Drs. Miller and Sandifer (and possibly Lea), and none of these opinions support the residual functional capacity assigned by the ALJ.

The ALJ's erroneous rejection of Dr. Miller's opinions resulted in a residual functional capacity assessment unsupported by substantial evidence of record, particularly the assigned walk, stand, and sit capacities of six hours in an eight hour workday. There is simply no evidence in the record by any examining or treating physician supporting the ALJ's finding Fontenot can stand or walk for up to six hours in an eight-hour workday.

The ALJ stated Dr. Miller's physical capacity assessment was "self-contradictory in that it indicates the chiropractic treatment is actually controlling the claimant's condition." (R22). Even if a "self-contradictory" opinion would absolve the ALJ from the detailed analysis required by 20 C.F.R. §404.1527(d)(2)-(6), the undersigned finds no such contradiction. (R22). Dr. Miller's statement pertaining to chiropractic treatment "controlling" the condition clearly indicates Fontenot's condition was not deteriorating to

11

the point he would require surgical intervention and is irrelevant to Fontenot's functional limitations.

The undersigned can find no contradictory opinion by a treating or examining physician in this case. As such, the ALJ erroneously rejected Dr. Miller's opinion without performing the detailed analysis required by 20 C.F.R. §404.1527(d)(2)-(6). The error was not harmless, as such an analysis would likely have led the ALJ to find, as does the undersigned, Dr. Miller's opinions on the nature and severity of Fontenot's impairment "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence," and given controlling weight. See Martinez v. Chater, 64 F.3d 172, 176 (5th Cir.1995), citing 20 C.F.R. §404.1527(d)(2)).

While remand might otherwise be necessary to assess at the fifth step whether there other gainful employment was available to Fontenot, the vocational expert testimony obviates the need for such a measure.

At the hearing, the ALJ asked the vocational expert the following hypothetical, incorporating Dr. Miller's assigned RFC:

> Q. And I assume that if Mr., Mr. Fontenot had problems to the extent that he could only stand a total and walk a total of two hours and sit a total of two hours and if he had to spend four hours just dressing or taking breaks could he do these jobs or any other jobs on a sustained basis?
>
> A. No, sir.

(R64).

If the ALJ had given Dr. Miller's opinions proper weight, and incorporated same into his residual functional capacity assessment, a finding of disability would have been indicated as there was not a significant number of jobs in the national economy that Fontenot could perform.

For these reasons, the undersigned recommends the decision of the Commissioner be reversed, and disability benefits awarded retroactively to April 15, 2002.[2]

### *Conclusion and Recommendation*

For the reasons given above,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **REVERSED** and disability benefits awarded retroactively to the alleged date of onset, April 15, 2002..

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the**

---

[2] While not used as a basis for reversal of the ALJ's decision, the undersigned notes Fontenot was found disabled under a subsequent disability application.  Therefore, this recommendation only covers the period from the alleged date of onset in this application, April 15, 2002, to the date of onset determined in the subsequent application and award.

**proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).**

Signed in Lafayette, Louisiana, this 18th day of March, 2010.

_____
Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)